IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARCOVOUS L. WILLIAMS                                           PLAINTIFF

v.                              No. 4:09-cv-111-DPM

ARKANSAS DEPARTMENT OF
CORRECTION; LARRY NORRIS,
in his official capacity as Director of
Arkansas Department of Correction;
ROBERT A. PARKER, mental health
administrator; KAY HOWELL, Warden,
Wrightsville Unit; ROGER CAMERON;
KERRY BAKKEN, clinical supervisor; and
SHARON MCGLOTHIN, unit supervisor              DEFENDANTS

ORDER

1. **Background.** After she was fired, Marcovous Williams sued her

former employer, the Arkansas Department of Correction, and many ADC

supervisory employees, making a host of civil-rights claims. She is *pro se*.

This Court granted judgment on the pleadings on most of her claims, № 37,

and granted summary judgment on her retaliation claim. № 63. Williams

appealed. The Court of Appeals affirmed, except on one issue: her allegations

of a hostile work environment at ADC, the appellate Court held, stated a

claim. 438 Fed. App'x 535, 2011 WL 5061568 (2011) (*per curiam*). On remand,

the parties have conducted discovery about the alleged race-based and

gender-based hostility toward Williams at ADC because there had been no opportunity to do so the first time around. All the ADC Defendants have moved for summary judgment. Williams missed her deadline for responding to the motion, but the Court granted her an after-the-fact extension to do so. № 86 & 87. Williams has responded. With her papers, she has also filed an amended complaint. № 88, 89, 90, & 91.

2. The Amended Complaint. The ADC Defendants treated the amended complaint as a combined motion to amend and proposed amended complaint and objected to it. This was proper. The Court directs the Clerk to correct the docket sheet: № 91 should be a motion to amend complaint; and № 92 should be a response. Williams needs permission from the Court to amend her complaint. FED. R. CIV. P. 15(a)(2).

Williams's motion to amend is denied. Because of the case's procedural history and the one issue remanded, the Court's post-remand Scheduling Order did not provide for amendments. № 74. The parties have already completed discovery, which was a bit bumpy, on the hostile-work-environment claim. № 80 & 81. If Williams had wanted to add new claims, she should have sought to do so sooner. In any event, this amendment would

-2-

be futile—Williams's proposed amended complaint echos the amended complaint she filed in March 2009. *Compare № 3 with № 91.* The Court has already decided all of these claims, and the Court of Appeals affirmed, except on the hostile-work-environment claim. While leave to amend should be freely given, FED. R. CIV. P. 15(a)(2), justice does not require that step for claims already resolved, which is the situation here. *Sherman v. Winco Fireworks Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Williams attached approximately sixty-five pages of documents to her proposed amended complaint. *№ 91.* The Court has considered these materials as part of the summary-judgment record.

**3. Immunities and Proper Defendants.** Williams brings her hostile-environment claim under Title VII, the Arkansas Civil Rights Act, and 42 U.S.C. §§ 1981 & 1983. The Eleventh Amendment bars the § 1981 and § 1983 claims against all Defendants in their official capacities. *Lockridge v. Board of Trustees of University of Arkansas*, 315 F.3d 1005 (8th Cir. 2003); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Those claims are dismissed with prejudice.

The individual-capacity Defendants, as government officials acting

-3-

within their discretion, are entitled to qualified immunity unless they violated Williams's clearly established rights. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Williams alleges discriminatory behavior only by McGlothin. That claim must be resolved on the merits. Because there is no *respondeat superior* liability under § 1983, *Vaughn v. Greene County, Arkansas*, 438 F.3d 845, 851 (8th Cir. 2006), there can be no § 1983 liability for ADC, Norris, Parker, Howell, Cameron, and Bakken. Those claims are dismissed with prejudice.

Williams can bring Title VII claims only against her employer, the ADC, not against individuals. *Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377, 381 (8th Cir. 1995). The Title VII claims as to all individual Defendants are therefore dismissed with prejudice.

**4. Hostile Work Environment.** What remains are Title VII and Arkansas Civil Rights Act claims against ADC, and a § 1983 claim against McGlothin, in her personal capacity, asserting a work environment filled with hostility based on race and gender. The analysis of all these claims is identical. *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005). To reach the jury, Williams must show that there is a genuine dispute of material fact about one of five things: 1) whether she belongs to a protected group; 2)

whether she was subjected to a hostile work environment; 3) whether the harassment was related to her protected status; 4) whether the harassment affected a term, condition, or privilege of employment; and 5) whether ADC knew or should have known about the hostile work environment and failed to act. *Ibid.*

**Protected group?** Yes. Williams is an African-American woman. ADC and McGlothin do not dispute that Williams is a member of two protected groups. *№ 83 at 4-5; Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000).

**Was Williams harassed?** The bar for an actionable hostile-work-environment claim is high. *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005). Considering the undisputed material facts, and taking the disputed material facts as she says they are, Williams does not clear it. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Williams has to show that working at ADC was more than just frustrating and that hostile or abusive behavior was more than occasional. Work must be "permeated with discriminatory intimidation, ridicule, and insult that is severe or pervasive." *Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d 546,

-5-

550 (8th Cir. 2007) (quotation omitted).

Consider one of the precedents. An employee at a food manufacturing plant was physically threatened, stalked, humiliated repeatedly, and verbally assaulted by supervisors. Co-workers slammed doors in the employee's face and keyed her car in the company lot. The employee made nine formal complaints to management without getting any responsive action. *Scusa v. Nestle USA Co., Inc.* 181 F.3d 958 (8th Cir. 1999). The Court of Appeals held that the conduct was neither extreme nor frequent enough to create a hostile work environment. 181 F.3d at 966-67. Williams's claim rests on less severe behavior.

Taking the key facts as Williams says they are, *Torgerson*, 643 F.3d at 1042, here is what happened. McGlothin ridiculed Williams in group meetings, took unwarranted disciplinary action against her, and "treat[ed] Williams differently." *№ 3 at 4-5; № 84-23 at 31-36.* And Williams and McGlothin had a contentious meeting about Williams's clothing, during which McGlothin partially exposed her breasts.

McGlothin called Williams into her office to discuss Williams's shirt, which McGlothin thought was inappropriate for work and violated the ADC

-6-

dress code because it showed too much cleavage. № 84-23 at 36-37. Belinda Rollins, another ADC employee, was in the office, too. Williams asked Rollins to leave so she could discuss the issue with McGlothin alone. № 84-23 at 37. Rollins left. Williams and McGlothin then disagreed at length about the appropriateness of the shirt; Williams said she had worn it many times, while McGlothin insisted she never wear it again. Williams says the conversation ended when McGlothin said "[w]ell, let me show you." № 84-23 at 38-39. Then McGlothin, who "had on a polo shirt that buttoned up three buttons[,] . . . physically unbuttoned her buttons, all three of them, and she pulled back her shirt[,] . . . [and] her bra straps with it—and her chest was showing." № 84-23 at 38-39. Williams told McGlothin that her action was inappropriate, to which McGlothin responded "[w]ell, now you know what I'm talking about. Don't let it happen again." *Ibid.* Williams left the room, told another employee, and filed a report about the encounter. № 84-23 at 39-40.

This record presents no trial-worthy issues. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The contentions that McGlothin took unwarranted disciplinary action against Williams, belittled her in meetings, and treated her differently, are vague and unsupported.

-7-

Williams has not said with any specificity how she was ridiculed, treated differently, or disciplined unfairly. Williams must support these parts of her hostile-work-environment claim "with sufficient probative evidence that would permit a finding in [her] favor." *Bacon v. Hennepin County Medical Center*, 550 F.3d 711, 716 (8th Cir. 2008). She has not.

The shirt incident is troubling but isolated. Any reasonable person would agree that McGlothin's actions, as described by Williams, were unacceptable and highly inappropriate. But under precedent, even highly inappropriate behavior does not create a hostile work environment if the behavior was a one-time event. *Cross v. Prairie Meadows Racetrack and Casino, Inc.*, 615 F.3d 977, 981-82 (8th Cir. 2010) (discrete incidents, including a male employee brushing a female co-worker's breast with the back of his hand and telling other employees that she engaged in sexual acts with him, were insufficient to create workplace permeated with discrimination); *Rheineck v. Hutchinson Technology, Inc.*, 261 F.3d 751, 756-57 (8th Cir. 2001) (employees circulating a nude picture, claiming it was of a female co-worker, did not create a hostile environment). While one "extremely serious" incident may suffice, *Cross*, 615 F.3d at 982 (quotation omitted), the governing cases make

-8-

plain by their facts that McGlothin's actions do not satisfy this rigorous criterion.

**Related to protected status?** Even if Williams's evidence creates a fact issue on whether a hostile environment existed, Williams must also offer evidence that the mistreatment occurred because of her gender or race. *Green v. Franklin National Bank of Minneapolis*, 459 F.3d 903, 912 (8th Cir. 2006). Purposeful discrimination must have motivated McGlothin's untoward actions. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Discriminatory intent can be shown with "direct and circumstantial evidence but is most often proved with evidence that similarly situated [people] were treated differently." 486 F.3d at 1028.

Williams's case stumbles here too. There was no name calling; there were no slurs or epithets. Williams offers no evidence permitting an inference of discriminatory animus by McGlothin based on gender or race. Williams also offers no evidence that similarly situated male employees, or similarly situated white employees, were treated better. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 882-883 (8th Cir. 2005). McGlothin is white; Williams is black. There must be more. The Court cannot infer a nexus between

Williams's treatment and her protected status where no evidence tends to show one. *Smith v. Fairview Ridges Hospital*, 625 F.3d 1076, 1082 (8th Cir. 2010), *abrogated on other grounds by Torgerson*, 643 F.3d at 1043.

**Was Williams's work affected?** Assuming her work environment was hostile, Williams must also offer evidence that the hostility was so pervasive that it affected a term, privilege, or condition of her employment. The Court must consider whether physical threats are involved, the severity of the behavior, the frequency of the alleged harassment, and whether it affected Williams's job performance. *Wright*, 417 F.3d at 884.

Williams offers no evidence of violence or physical threats. McGlothin's behavior, other than the breast-exposure incident, was not severe. *Compare Bowen v. Missouri Department of Social Services*, 311 F.3d 878, 885 (8th Cir. 2002). That incident was isolated. *Compare Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 930 (8th Cir. 2010). The Court of Appeals affirmed that Williams's termination one week later was for legitimate and nondiscriminatory reasons, not in retaliation for complaining. № 63; 438 Fed. App'x at 536. So Williams may not rely on her firing as adverse-effect evidence. And Williams offers no evidence that, before the shirt incident, her icy relationship with McGlothin affected her ability to do her job well. *Clegg*

-10-

*v. Arkansas Dept. of Correction*, 496 F.3d 922, 929-30 (8th Cir. 2007).

**ADC's Response?**  Williams has not offered evidence that ADC failed to act.  The record suggests the opposite.  Immediately after Williams complained that McGlothin was harassing her, ADC replaced McGlothin as Williams's supervisor and began an internal investigation.  Interviews were done, including of all witnesses.  ADC's investigation concluded that Williams's allegations were unfounded.  № 84-10.  Put aside whether that conclusion was correct.  Once notified, ADC indisputably responded appropriately and promptly to Williams's concerns.  *Rheineck*, 261 F.3d at 756.

\* \* \*

No reasonable juror could find for Williams on her hostile-work-environment claim.  Docket corrections on № 91 and № 92 directed.  The motion to amend, № 91, is denied.  The motion to continue, № 95, is denied as moot.  The motion for summary judgment, № 82, is granted.  Williams's remaining claim is dismissed with prejudice.

So Ordered.

D.P. Marshall Jr.
United States District Judge

30 May 2013